PDVSA US Litigation Trust v. Lukoil Pan Americas LLC PDVSA US Litigation Trust v. Lukoil Pan Americas LLC Okay Mr. Carpinello. Thank you, Your Honor. It's George Carpinello along with my co-counsel Oleska Suero Garcia on behalf of the appellants. Your Honor, I'll Your Honor, your order raised the issue of whether there's a political question here. And there is a political question, I agree, but we don't know what the United States' position is at this point. Well, I thought it was without dispute that the United States of America recognizes a different government from the one that controls the client you represent. I think that is very much in dispute. How is that? Well, the United States officially recognized the Guado administration. Yes. It was selected by the National Assembly. There is no Guado government. It does not recognize the Maduro government. Well, it's not clear whether it recognizes the instrumentalities of the Maduro government and there are reasons for that. First of all, the United States has authorized United States government says about the client you represent. It has said nothing about the client we represent. The client we represent, I thought it said that this in no way has authorized this litigation and doesn't support it. There's no statement from the State Department to that effect. No, no, that's not what I said. The Guado government said that. The Guado government said that. The Guado government does not exist anymore. It has been dissolved. The National Assembly. That sounds to me like a political question. But I don't disagree, Your Honor. And I think the way to handle this is to actually ask the State Department what its position is with regard to the ability of. Tell me why we would do that. President Trump recognized the Guado administration as the legitimate government of Venezuela in January of 2019. If I have that right and the Biden administration, if I have it right, and help me if I've misapprehended this confirmed that the U.S. stance on the Maduro's lack of legitimacy hasn't changed since Biden took office. The U.S. doesn't accept Maduro as Venezuela's legitimate president and instead recognizes Guado. Has that changed? Yes, because Guado doesn't exist anymore. And the United States State Department has not made a definitive statement since the Guado administration was terminated by the National Assembly. The National Assembly of held that Guado was the legitimate executive of Venezuela. There is no executive of Venezuela anymore. Does not exist as recognized by the United States. What the United States' position is now with regard to PDVSA is uncertain because the United States has specifically authorized American companies to contract with PDVSA, our client. There is no PDVSA board appointed by Guado. The National Assembly, as we pointed out in our letter, has appointed a board solely for the purpose of controlling the shares of Citgo. It pointedly did not, did not appoint a PDVSA board for the purposes of dealing with the production of oil in Venezuela, which is the issue in our case. The default case... Help me, help me with this. And it's really a temporal question that I'm asking you. Is the right question here not who the government recognizes today as the legitimate government of Venezuela, but rather who the U.S. government recognized at the time that the district court ruled? Does it make a difference, even if you were right that the government's position had changed? Well, first of all, I do not think it was clear when the district court ruled, but I do think it's the question now because this case is still existing. We brought a motion by PDVSA to intervene. The court didn't... First of all, the district court did not even rule on this question, which is why we don't think the court should be... Does it matter that at the time it was very clear that the United States did not recognize the Maduro government that appointed your clients forward? Well, let us say, for example... I'm trying to answer your own question. Let us say, for example, that the State Department today issued a... I'm not talking about that. I'm talking about then, the district court. I'm answering your question, Your Honor, but I think I am. You're changing the facts. I'm saying that it does matter. It does not matter what this position was then. What matters is now. Because we have a motion... We were determining whether the district court... What we were here to determine was whether the district court abused its discretion when it denied the motion to intervene and substitute, the motion to reopen and substitute. I disagree that it's an abuse of discretion. I think the district court held that it lacked subject matter jurisdiction, which is an issue. Okay. Whether it thought that it had subject matter jurisdiction at that time, whether that was here or not. Not today. What would happen if a motion were filed today involving different facts, but whether at the time it erred when it concluded that it lacked subject matter jurisdiction? Well, I think if the court had ruled that at the time it ruled on the motion that we do not have subject matter jurisdiction because there is no party with standing, then that would be the question. It would be that period of time. The court did not so rule. The court did not address the issue. So the question is now before this court. And if I may go back to my hypothetical, if the state department... So it isn't relevant whether the question was justiciable or not as a political question at the time the district court ruled. It's only relevant today because circumstances may have changed, albeit only somewhat. I think in the area of dealing with political question, where you have an ongoing case, if the position of the state department changes while the case is ongoing, that should change the result. As I was trying to say, if the state department said today that our client has the capacity as recognized by the U.S. government to pursue this case, I don't think the result would be anything other than... Let me ask the question this way. ...to pursue the case. The case is still ongoing. If the state department of the Biden administration tomorrow was to turn around and say, we've changed our mind and we now recognize the Maduro government. We originally said no, and our predecessor said no. And in light of new political events, we've changed our mind. At that point, you would still have a remedy, wouldn't you? No, not a practical remedy. Why not? What am I missing? I'm not sure I understand why you wouldn't. My position would be that the motion to intervene should be granted and vacated. Let me read you the district court's order that's on appeal, okay? It says, while a motion to intervene may have been timely and appropriate much earlier in the case, it must be denied because the court does not have subject matter jurisdiction. Correct. And we're here to determine whether that order, when it was entered at that time, was correct or not, right? That the district court lacked subject matter jurisdiction. It concluded that it had earlier made a determination of lack of subject matter jurisdiction that our court had affirmed. That was part of its reasoning. And whether that was good reasoning or not, its judgment was that it lacked subject matter jurisdiction, in which case what it does is its ruling is one that is without prejudice. It doesn't prevent a future entity recognized by our government, about which there would not be any dispute of this kind, from coming in and then litigating to enforce its rights. Well, as a practical matter would, because the statute of limitations would have run, because this case, we've been litigating the standing of Pita Vesa for literally five years. Yeah, well, sorry about that. But to answer your question, Your Honor, I disagree. I think that if the status of Pita Vesa changes during the appeal, that you should recognize the position of the State Department. And I do assert that he did not make a finding, the district court did not make a finding, that Pita Vesa lacks standing. It made a determination that it lacks subject matter jurisdiction. On a totally different ground. Right. So we can affirm for any reason supported by the record, if the district court was right, that it lacked subject matter jurisdiction, but for a different reason at the time, we would have to affirm, wouldn't we? I disagree, Your Honor. I think when the area of political question, in the area of political question, where there's a change in the State Department's position, while the case is still ongoing, that requires a change with regard to allowing the party to proceed. What you're saying, Your Honor, is if the State Department today said, Pita Vesa, we recognize Pita Vesa, our client, and they may pursue this case, you would say, no, this case is over because at the time Judge Gales entered his order, you didn't recognize it. I don't think that's, I don't think that's- Seems to me that there's a second problem that you have. Even assuming that you can navigate around the problem that we're focusing on, we have to look at justiciability at the time the district court rendered its judgment. Even if we could say there's a separate exception for political questions where the State Department changes its view and takes a different view. The second problem I think you have, and you can help me with it, is I don't see anything in the record that says the United States has changed its position. It's one thing to say we're occupying the embassy in Washington, et cetera, but they've never backed off their position, as best I can tell, that they do not recognize the government of Maduro, period, end of story. Have they changed their view on that? Not formally, but I think it's, given the fact that de facto the State Department has, in effect, recognized PDVSA- How have they done that? How have they practically, in effect, done that? By authorizing, for example, the Chevron oil company and several multi-international companies to expressly contract with PDVSA. Now, if they didn't recognize the PDVSA in Venezuela as being a legitimate body, they would not have specifically authorized companies- They can recognize that there's a de facto and a de jure distinction. That happens domestically, right? It may be that there are some people who are actually performing and operating what appears to be a government, but we don't, by law, recognize them as such. That's pretty important. I think the case lays, Your Honor, that the United States government's position governs, and that could be de jure or it can be de facto. Right, but put it more practically. Couldn't the State Department say, we want to get Exxon or Chevron in to drill some oil down there, but we're still not recognizing the government of Maduro? They could, but I think the appropriate- And in fact, all you've established is just that. Well, I don't- At most. Maybe I'm missing it. I'm hard-pressed to see where the State Department has renounced their original position, and it seems to me, unless and until they do, you've got a political question problem. I have a political question problem, which I think should be resolved by asking the State Department their position, and because the State Department's position is paramount, I don't see what the problem is with this court asking, remanding, first of all, to have the district judge address the issue, which he didn't, and allowing the State Department to come in and express a position. I'm curious, in all the political question cases that have come up, and there've been a whole bunch in lots of different contexts, has a court ever remanded for the purpose of asking the federal government, the executive branch of the federal government, what its position is on a matter like this? I don't know whether it happened in the context of remand, but I know there are many, many cases where the district court has asked the State Department under 517, 28 U.S.C. 517, to express their position. In fact, they've done so in these cases involving PDVSA, which I think the court should have done. I see my time is up. I'll reserve my rebuttal for the other issues. Thank you. Thank you, Your Honor, and may it please the court. William Burke and Chris Michel for the appellees. Your Honor, I'd like to just start with a quote from our 28-J response to the 28-J letter that the appellants put in. The State Department said on January 3rd of 2023, after the National Assembly had withdrawn its support for the Guaido government and casting doubt on whether or not the Guaido government is now recognized by the U.S. government, but here's what the U.S. government, the State Department, said. It's in our letter, Your Honor. State Department, in terms of our approach to Maduro, our approach has not changed. He is illegitimate. That was the official statement by the State Department on January 3rd of 2020. No dispute that the entity that wants to be substituted here is controlled by him. Yes, Your Honor, this is the Maduro PDVSA. In fact, Your Honor, one of the ways that we've been thinking about this Maduro PDVSA is that it's effectively an imposter PDVSA from the U.S. government's perspective, from the executive branch's perspective. The real PDVSA used to be the Guaido government's PDVSA, which courts in Crystal X and other courts in Delaware have all recognized control PDVSA for purposes of the U.S. government. In the Crystal X case, the U.S. government actually weighed in. In fact, they're going to change from Maduro's legitimacy to his illegitimacy in that case. The Guaido government was then asked to opine by the U.S. government saying that the Guaido government now controls PDVSA. We'd like to get their views. That's what the U.S. government said to the court in Crystal X. And then the view of the Guaido government was... Let me ask the question this way. Even assuming arguendo that the State Department had changed its position, are we not obligated to temporarily ask the question that's looking at what district court had in front of him at that time? Yes, Your Honor, absolutely. What matters here, Your Honor, is at the time the district court made the decision, was the Maduro government viewed as a legitimate government of Venezuela? Absolutely the question. The answer to that, I think even the appellants would acknowledge, is absolutely it was not viewed as legitimate government. Let's suppose the position did change formally. We renounce Satan, we're now happy to recognize the guy. They say something like that. Yes, Your Honor. So they would be without a remedy though, wouldn't they? No, Your Honor. In fact, they'd be time-barred is what I'm really asking. Your Honor, that is, I think as the Chief Judge said, that's not really... That's a problem for them. That may be their problem, but I'm asking the question. Your Honor, let's call it my curiosity. Yes, Your Honor. So what they could do is they could file a new lawsuit. They would then... The statute of limitations of defense that the appellees might raise, probably would, in other defenses. And they would also have unequitable tolling, any... Tolling, all kinds of arguments. It would be a normal litigation, Your Honor. So they're not without a remedy. If they are without a remedy, it's going to be because on the merits or because of statute of limitations issues, the court, the district court would dismiss the case. But that's not because... That doesn't mean they can't file a complaint. They could... If the U.S. government says that Maduro is now fine, he's legitimate, that a base of presuming could file a complaint, the defendants could raise the statute of defenses. The district court would decide whether or not those were valid and would dismiss or not dismiss the case. So they are with and not without a remedy. The problem here, Your Honor, is that the appellants are asking this court to do exactly, exactly what Judge Marcus, you wrote in Carmichael, what the Supreme Court has written many times, is to wade into a political question about who controls PDVSA, even though the U.S. government as recently as January 3rd has very does not, from the U.S. government's perspective, because he's not legitimate. And they're asking the court to make predictive judgments about where the U.S. government might go, which to the prior point, Your Honor, doesn't even matter because at the end of the day, the question that actually is before this court is whether or not the district court, at the time the complaint was filed and at the time the substitution was rendered or it was requested, that whether or not the Maduro government was legitimate. And at the time the motion was made from the Maduro government, including by the appellant's own admission, was not, was not a legitimate government. So, Your Honor, the political question doctrine here, we think, makes it abundantly clear that this court and the court below lacks subject matter jurisdiction. It's black letter law, it's insincere. Does the record reflect that at least at the time that the district court was, entered its order, that the Guaido government had actually appointed an alternative order directors for this entity? Yes, Your Honor. Just to correct something, we have jurisdiction to entertain the appeal and rule on whether it's a political question. Yes, of course, Your Honor. Which is different from saying the district court lacked subject matter jurisdiction to entertain it. Yes, Your Honor. So the, the, and if the district court was right that it lacked it, we are, the decreed language in your view should be affirmed. Exactly, Your Honor. So the, Your Honor, of course, the court has the, has the power and the authority to review the question of subject matter jurisdiction. The issue that the district court ruled on, although it was not clear exactly how far the subject matter jurisdiction issue went, certainly this court has the power to affirm or on any grounds that it believes is, is valid. Let me ask you just the record evidence question. Is it part of the record before this court that the State Department has continued to this record? But where would I, where would I find it in the record? Your Honor, we can, I will, I will find a specific record citations for the court and I'll provide that to the court. This was never disputed by the appellants during the, so this has never been raised as an issue that somehow you read in your 28 J letter is you make that part of the record, right? Yes, we made that part of the record before the, before this court. Yes. But even if you hadn't made it part of the record, uh, we would be able to take judicial notice about what the Department of State said in January of this year. Would we not? Yes, Your Honor. Absolutely. And, and of course at below before the district court, again, if they had spoken with clarity on the issue, I suppose we could take adjudicative notice. Again, I'll quote in terms of our approach to Maduro, our approach has not changed. It, he is illegitimate. And again, Your Honor, this was an hour response to the 28 J that they filed. I'm saying that there was some change in position of the Guaido government. The fact Your Honor, and I think the court, the court has actually has already addressed this with my colleague. The fact that the Guaido government may no longer be recognized by the U S government because of the national assembly doesn't therefore render Maduro government's Pete Pettibasa somehow legitimate or give them an executive order. Um, yes, Your Honor, making clear that the Maduro government is not recognized by the United States. Yes, Your Honor. That has never been in dispute in this case, um, since 2019 until the, until on appeal, the, the, uh, the appellants have raised newspaper articles. Now it's just not clear. They say, they say it's not clear, but Your Honor, but that exactly can't point to anything affirmative though, that says the United States has de facto and de jure recognize the Maduro government is no, Your Honor. In fact, the, the, the issues that they raised was, you know, we don't not believe, or even in the record newspaper articles about prisoner swaps or Chevron agreements has, has, it would request, it would actually ask the court to decide to decipher whether, despite what the U S government has actually said repeatedly, including on below and, and what the, the pounds have never disputed that somehow these, uh, newspaper articles give us, uh, give the court an opportunity to say, well, maybe, maybe the U S government has changed its mind, even though they've said they haven't, and there's nothing, uh, de jure or de facto, they say they haven't. And as, as the chief judge, uh, uh, recognized, uh, again, again, questioning my colleague, the fact that the U S government may be engaging in prisoner swaps or allows a U S company, I have a deal with, and I did that with a terrorist org. They could do exactly. Your Honor. So, so there, the, the Taliban, for example, were handed over, uh, Afghanistan was having back to Taliban, you know, they were not recognized as legitimate. So this, that doesn't change the fact that the U S government's position has been definitively from Trump through a president Biden and definitively Maduro does not, does not, um, control PETA VASA. And that is effectively the end of the story for purposes of political question doctrine. And again, anything beyond that, the court would be, is being asked to make predictive judgments about what, and that's exactly what the political question doctrine is meant to avoid. That would be waiting directly into the separation of powers issue. That's at the heart of the doctrine. We believe that as, as the court, um, implied and actually stated in its order from a couple of weeks ago, that of course the court can, uh, affirm on any grounds that it believes is, uh, is valid and here's subject matter jurisdiction on the political question doctrine, even though it was not specifically addressed by the district court is a valid ground to, to, uh, to, to affirm. Uh, I can also address the, the issues that the court did specifically, um, look at, which is a subject matter jurisdiction on the nullity doctrine and rule 17, but those actually fall away completely. All of these issues fall away. If the court agrees that the political question doctrine controls, and that in this case, the Maduro imposter database, so from the U S government's perspective does not have standing, there's no case or controversy to be reviewed by the court, by the lower court. And that, that would be a basis for this court to affirm. I'm happy to, to use my additional five minutes, but I can also ask you, are you offering to give us some time back? I'm offering you a good time back. Thank you. Okay. Mr. Carpinello, um, you've got three minutes. Uh, thank you, your honor. Um, I don't think it violates the separation of powers for this to ask the state department for a definitive view on what their position is. I understand, I understand your honor's position with regard to, it doesn't matter anymore because it, what happened at the time is what matters. I have a question about that. It's kind of the inverse of one of Judge Marcus's questions. So had, had your client been the state department recognized, um, uh, government, and then today the Biden administration said, no, majority is not the recognized. Would we instantly lose jurisdiction? I, yes. The inverse is true. That's exactly right. If, if, so we would lose jurisdiction because it's temporal. Um, I think with, uh, as soon as it, as soon as you need to listen to it, I thought, I thought her question was if in fact we were recognized at the time, his decision, right. And then today the department has come out since then while this appeal is pending and said, they're no longer recognized. Would that, we didn't suddenly lose jurisdiction. Yes. That's consistent with my position that we would lose that. It's that hurts you. I don't think so, your honor, because what I'm saying is I don't agree with the court that the determinative date is what the state department's position was at the time Gail's rendered his decision. If I'm saying that if the state department expressed this position, while this case is on an appeal that would govern. And if it went the other way, it would govern against me. But if it, but it, we, her question was, we would lose jurisdiction because what we would be, you would be asking us to do is to send it back to the district court to perform what is effectively a novelty to recognize something that the state department doesn't recognize as of now. See, that's the problem. The jurisdiction has been lost by, by subsequent event. It doesn't change the fact that the way this is actually played out is the question is whether the district court had jurisdiction at the time. And we have jurisdiction to review it. And we're concluding that it, that there was no mistake because then it didn't have any jurisdiction. I just, my adversary keeps calling this the imposter of PDVSA. It is the only PDVSA for purposes of this case. There is no other PDVSA. There's no other, there's no other remedy for the people of Venezuela to obtain recovery from the defendants who I submit are going to get a windfall despite all their actions that violated the rights of the Venezuelan people. There is only one board that's active with regard to what's happening in Venezuela. There is no Guaido board for purposes of this case. Okay. Thank you. I think we understand your case. We're going to move to the last case, Austin versus Lancap.